UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MELISSA L. WILSON, | Civil Action No.: 16-11637 |
| | Honorable Sean F. Cox |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 18, 20]

Plaintiff Melissa Wilson appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the Court **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 20] be **GRANTED**;
- Wilson's motion [ECF No. 18] be **DENIED**; and
- the Commissioner's decision be **AFFIRMED** pursuant to sentence

four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

   A. **Wilson's Background and Disability Applications**

Born March 9, 1976, Wilson was 36 years old when she submitted her applications for disability benefits on January 24, 2013. [ECF No. 12-3, Tr. 120]. She has a GED and past relevant work as a caretaker and cashier. [ECF No. 12-6, Tr. 231]. Wilson alleged that she is disabled due to an Achilles rupture, with an alleged onset date of October 15, 2012. [ECF No. 12-3, Tr. 120]. For DIB purposes, her date late insured was December 31, 2016. [ECF No. 12-5, Tr. 211].

After the Commissioner initially denied her application, Wilson requested a hearing, which took place on May 7, 2014, and September 17, 2014, during which she and a vocational expert (VE) testified. [ECF No. 12-2, Tr. 43-113]. In a February 6, 2015, written decision, the ALJ found that Wilson was not disabled. [*Id.*, Tr. 18-42]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Wilson timely filed for judicial review. [*Id.*, Tr. 1-6; ECF No. 1].

   B. **The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Wilson was not disabled. At step one, he found that Wilson had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 12-2, Tr. 23]. At step two, he found that Wilson had the severe impairments of "status post left Achilles tendon repair, blind right eye status post detached retina, and depression disorder with anxiety." [*Id.*, Tr. 24]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 25].

Between the third and fourth steps, the ALJ found that Wilson had the RFC to perform light work[3] with the following exceptions:

> [T]he claimant is restricted against work around hazards, including work at unprotected heights, dangerous moving machinery, and no climbing of ladders, ropes, or scaffolds. In addition, the claimant cannot stand or walk more than 30 minutes at a time, and no more than 3 hours total in an 8-hour day. The claimant is limited to no

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

4

more than occasional climbing of ramps or stairs (which is defined as no more than one-third of the workday); and she is restricted against driving during the course of employment and no exposure to temperature extremes. She is also restricted against constant reaching overhead or otherwise. In terms of foot controls, the claimant can frequently operate foot controls with right foot, but only occasional operation of foot controls with left foot. The claimant is restricted to unskilled work, and no work with the general public. Additionally, the claimant is able to frequently, but not continuously, balance, stoop, kneel, crouch, or crawl. She can tolerate frequent exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants; and should be precluded from very loud noises such as a jackhammer noise, but could frequently be exposed to loud noises categorized as heavy traffic noise.

[ECF No. 12-2, Tr. 27]. At step four, the ALJ found that Wilson was unable to perform any past relevant work. [*Id.*, Tr. 35]. With the assistance of VE testimony, the ALJ determined at step five that Wilson could perform occupations such as assembler, sorter, and packer, and that those jobs existed in significant numbers in the economy, rendering a finding that she was not disabled. [*Id.*, Tr. 36].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Wilson argues that the ALJ's decision is not supported by substantial evidence, and that the ALJ erred in assessing her credibility. The Court disagrees and recommends that the ALJ's decision be affirmed.

## III.   ANALYSIS

### A.

Under a catch-all title that "the decision of the administrative judge is not supported by substantial evidence," Wilson advances two arguments: that the ALJ violated the treating physician rule and that the ALJ's assessment of her mental capacity was not supported by the record. [ECF No. 18, PageID 784-89]. These arguments are without merit.

Wilson asserts that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Shivajee Nallamothu, M.D., that Wilson's left tendon Achilles injury rendered her disabled. [ECF No. 18, PageID 784-86]. Wilson's chronic Achilles tendon rupture required surgical repair in December 2012. [ECF No. 12-7, Tr. 320]. Afterwards, Dr.

6

Nallamothu ordered physical therapy and home exercises, but Wilson did not follow through with physical therapy, reportedly because of a lapse of insurance. [*Id.*, Tr. 329-31, 427]. Dr. Nallamothu examined Wilson again in June 2013, finding that she still had mild pain and swelling, full strength, and decreased range of motion. [*Id.,* Tr. 427-29]. That was the last time that Wilson treated with Dr. Nallamothu before her May 2014 independent medical examination by Ernesto Bedia, M.D., who found her left ankle to still be tender to palpation and have limited flexion, and that she had difficulty walking on her left toes and heel, but the ankle had no swelling and she had a stable gait. [*Id.*, Tr. 434-36].

From July to September 2014, Wilson underwent an in-home therapy program with Guardian Angel Home Care. [ECF No. 475-642]. She was described in late August 2014 as being independent with respect to her postural transfers, and as having normal balance without support. [*Id.*, Tr. 631]. With Norco, Wilson's pain level was reduced to a three or four out of ten, her sleep was acceptable, and she was independent in her activities of daily living (ALDs). [*Id.*, Tr. 617, 622, 630].

In May 2013, which was prior to the in-home exercise program, Dr. Nallamothu opined that Wilson required a cane to ambulate; could not lift any weight; could not operate a foot/leg controller with either lower

7

extremity; could not tolerate prolonged standing or walking; could not sit for 6 hours in an 8-hour workday; and could use her hands for repetitively grabbing and fine manipulating, but not for repetitively pushing, pulling or reaching. [ECF No. 12-7, Tr. 354-56].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).

Here, the ALJ afforded "significant weight to the portion of Dr. Nallamothu's opinion regarding the claimant's ability [] to use her hands for fine and gross manipulation with both hands," but gave no weight to the rest of his opinion "because it is without support, and directly contradicts other credible evidence in the record." [ECF No. 12-2, Tr. 34]. The ALJ

8

reasoned that Dr. Nallamothu's own treatment records did not support a lack of exertional capacity or an inability to complete postural activities. [*Id.*]. He noted that Wilson had not been compliant with orders for physical therapy or home exercise at the time Dr. Nallamothu offered his opinion. [*Id.*, Tr. 34]. After Wilson did comply with the ordered treatment of in-home exercise, she "exhibited independent gait, good balance while standing, good strength in bilateral upper and lower extremities, and independent ability to transfer from bed to chair, sit to stand, and transfer to toilet, and tub/shower," and she retained the ability to perform her ADLs. [*Id.*, citing ECF No. 12-7, Tr. 513, 613, 629]. Lastly, the ALJ noted that Dr. Bedia reported findings that were directly contradictory to Dr. Nallamothu's opinion, including that Wilson was ambulatory with a stable gait, could stand for 30 minutes and walk for 20 minutes at one time, and could stand and walk for three hours total in an eight-hour workday. [ECF No. 12-2, Tr. 34, citing ECF No. 12-7, Tr. 434-42]. These constitute good reasons for the ALJ to decline to give Dr. Nallamothu's opinion controlling weight.

Wilson takes issues with the ALJ's reasoning that she was not compliant with her treatment plan at the time the opinion was given, noting that her insurance had lapsed. [ECF No. 18, PageID 785]. Yet the ALJ took into consideration Wilson's claim that she did not follow through with

9

physical therapy because of a lack of insurance, but he noted that Wilson testified that she was uninsured starting in August 2013—months after Dr. Nallamothu's December 2012 instruction that she participate in physical therapy. [ECF No. 12-2, Tr. 32, 55; ECF No. 12-7, Tr. 330-31]. The ALJ also noted that Wilson's condition improved when she complied with her treatment plan, which was after Dr. Nallamothu's opinion. [*Id.*, Tr. 34]. So regardless of the reason that Wilson did not attend physical therapy when first ordered to by Dr. Nallamothu, her improved after in-home therapy undermined the reliability of Dr. Nallamothu's opinions by the time of the hearing.

Wilson additionally cites 2012 x-ray and ultrasound results as supporting Dr. Nallamothu's opinion. [ECF No. 18, PageID 786, citing ECF No. 12-7, Tr. 311-13]. But that testing preceded Wilson's surgery and in-home therapy, and thus has no bearing on whether the limitations Dr. Nallamothu rendered in May 2013 were supported by the record as a whole. The ALJ provided good reasons, supported by the record, for giving limited weight to Dr. Nallamothu's opinion.

**B.**

Wilson argues that substantial evidence does not support the ALJ's decision related to her mental impairments because the ALJ failed to consider all factors related to her "emotional condition." [ECF No. 18, PageID 787]. She first claims that the ALJ discounted the fact that Carmen Serpa, M.D., a psychiatrist, diagnosed her with dysthymic disorder, [ECF No. 18, PageID 787], but the ALJ listed Wilson's severe impairments as including depression disorder. [ECF No. 12-2, Tr. 24]. Dysthymia is another name for persistent depressive disorder,[4] so this claim is without merit.

Second, Wilson takes issues with the ALJ's decision to accord limited weight to Dr. Serpa's opinion that she had a global assessment of functioning (GAF) score of 45.[5] [ECF No. 12-2, Tr. 35; ECF No. 12-7, Tr. 647]. But the Sixth Circuit has emphasized that no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006). Moreover, "a GAF rating is intended to demonstrate an individual's

---

[4] http://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/home/ovc-20166590. (viewed on August 9, 2017).
[5] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below." *Norris v. Comm'r of Soc. Sec.,* No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).

overall mental status at a specific point in time, and is not to be construed as a longitudinal picture of an individual's overall mental functioning." *Stokes v. Comm'r of Soc. Sec.*, No. 1:13-CV-487, 2015 WL 803087, at *15 (W.D. Mich. Feb. 25, 2015). The ALJ properly considered the effects of Wilson's longitudinal mental health treatment, [ECF No. 12-2, Tr. 25-26, 30, 31, 33], and thus did not err by giving little weight to the single 45 GAF score.

Third, Wilson notes that psychologist Terrence Mill, Ph.D. diagnosed her with major depressive disorder, recurrent, moderate with anxious distress; generalized anxiety disorder; and panic disorder, and she asserts that these diagnoses "could prevent her from functioning in the workplace." [ECF No. 18, PageID 787, citing ECF No. 12-7, Tr. 452]. In advancing this argument, Wilson conflates a diagnosis with functionality; a diagnosis says nothing about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). And in fact Dr. Mills found after his consultative examination that Wilson was in contact with reality and oriented; had fair insight and problem solving skills; had organized, relevant and easy to follow thought patterns; had logical and goal directed thought processes; and appropriate affect. [ECF No. 12-7, Tr. 451]. He concluded that she did not appear to have difficulty carrying out one-step instructions and suggested psychological

testing to determine her cognitive functioning. [*Id.*, Tr. 452]. Dr. Mills' opinion is thus inconsistent with Wilson's argument that she may not be able to function in a workplace.

Fourth, Wilson argues that the treatment records from Easter Seals establish that she received treatment for her mental disorder, and thus provide proof of disability. [ECF No. 18, PageID 787, citing ECF No. 12-7, Tr. 463-73, 644-70]. After citing to these Easter Seals' record, Wilson asserts in a conclusory manner, "These records provide proof of disability." [ECF No. 18, PageID 787]. She does not specify which portion of these records she is relying upon or analyze how the records render her disabled under Social Security regulations. Her argument that the Easter Seals' records supports her claim mental disability is thus waived. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir.2005) (internal quotation marks and citations omitted); *see also Bishop v. Gosiger, Inc.*, 692 F.Supp.2d 762, 774 (E.D.Mich.2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones." (internal quotation marks and citations omitted)).

Wilson's fifth argument—that the ALJ substituted his judgment for those of trained clinicians—is also without merit. [ECF No. 18, PageID 788]. Sandra Coutu, M.A., a limited license psychologist evaluated Wilson with Dr. Mills, and Coutu offered a statement regarding Wilson's ability to do work related mental activities. [ECF No. 12-7, Tr. 449-455]. Coutu found that Wilson had no restrictions in her ability to understand and remember simple instructions; carry out simple instructions; and make judgments on complex work-related decisions; but moderate restrictions in her ability to interact appropriately with supervision, co-workers and the public. [ECF No. 12-7, Tr. 453-54]. The ALJ gave great weight to and incorporated Coutu's opinion in crafting the RFC, and thus restricted Wilson to unskilled work with no contact with the public. [ECF No. 12-2, Tr. 35].

Lastly, Wilson argues that the ALJ should have ordered an independent psychiatrist evaluation, but Dr. Mills and Ms. Coutu provided an independent evaluation.

For all of these reasons, Wilson's objections to the ALJ's assessment of her mental health are without merit.

## C.

Wilson challenges the ALJ's finding that she was not fully credible regarding her mental impairment. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of her credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015). "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Here, Wilson has provided no compelling reason to disturb the ALJ's credibility determination.

The ALJ found that "[w]ith regard to the claimant's alleged depression and anxiety, the claimant has proffered evidence that she has depression with anxiety, and accordingly, I find her allegations partially credible." [ECF No. 12-2, Tr. 33]. He noted that Wilson "attributed her depression and anxiety to her pain, prior homelessness and lack of employment," and accorded those factors limited weight because lack of employment and homelessness are "situational sources of the claimant's depression." [*Id*.].

15

The ALJ also found that Wilson's testimony concerning anxiety attacks was not supported by the record, and he noted that she had only mild limitations in activities of daily living and moderate limitations in social functioning, concentration, persistence, and pace. [*Id.*].  The ALJ thus detailed his reasoning for finding Wilson less than fully credible, and his reasoning is consistent with the record.  Therefore, there are no compelling reasons to disturb the ALJ's credibility determination and his decision should be affirmed.  *Cox*, 615 F. App'x at 261; *Rogers*, 486 F.3d at 248.

Wilson argues that the ALJ "failed to consider the impact of the non-exertional impairments on Plaintiff's ability to function." [ECF No. 18, PageID 789].  However, Wilson fails to point to any evidence in the record to support her point.  This argument is thus waived.  *Dillery,* 398 F.3d at 569; *Bishop,* 692 F.Supp.2d at 774.

## IV. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 20] be **GRANTED**; that Wilson's motion [ECF No. 18] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: August 17, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 17, 2017.

                                s/Marlena Williams
                                MARLENA WILLIAMS
                                Case Manager